IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OMAR GALAN-REYES, | ) |
| | ) |
|                 Petitioner, | ) |
| | ) |
| vs. | ) Case No. 20-cv-345-SMY |
| | ) |
| DAMON ACOFF, | ) |
| Warden, Pulaski County Detention Center, | ) |
| | ) |
| ROBERT GUARDIAN, ICE Field Office | ) |
| Director, Chicago, | ) |
| | ) |
| CHAD WOLF, Secretary, | ) |
| Department of Homeland Security, | ) |
| | ) |
| and | ) |
| WILLIAM BARR, Attorney General, | ) |
| | ) |
|                 Respondents. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Petitioner Omar Galan-Reyes, currently in the custody of U.S. Immigration and Customs Enforcement ("ICE") and detained at the Pulaski County Detention Center in Ullin, Illinois ("Pulaski"), filed a "Petition for Writ of Habeas Corpus and Request for Release from Detention" on April 13, 2020. (Doc. 1). Invoking 28 U.S.C. § 2241, he challenges the constitutionality of his detention without bond, seeks an order releasing him from ICE custody, and requests that if bond is set, it be in a reasonable amount.

The matter has been fully briefed and the Court held a telephonic evidentiary hearing on Thursday, May 7, 2020 during which Galan-Reyes testified.[1] The Court having considered the

---

[1] At the direction of the Court, Respondents have filed a supplemental declaration with updated information on the number of cases of COVID-19 at Pulaski and measures taken to prevent infection (Doc. 19).

1

pleadings, testimony, and the arguments of counsel, **GRANTS** the Petition and **ORDERS** Galan-Reyes' release from custody.

## Background

Omar Galan-Reyes is a 26-year-old citizen of Mexico. He was brought to the United States by family members in 2000, entering without inspection, and has lived in this country continuously since then. He was granted legal status under the Deferred Action for Childhood Arrivals program ("DACA") on April 23, 2015, which expired on April 22, 2017. (Doc. 1, pp. 2-3). He has submitted an application to renew his status. His immediate family members are either U.S. citizens or legal permanent residents. If released from custody, he will live with his mother and stepfather.

Galan-Reyes has no felony convictions. His only criminal conviction was a 2016 misdemeanor for resisting a peace officer, for which he served a 64-day jail sentence. He has been in immigration detention since September 19, 2019, following an arrest in Joliet, Illinois, for possession of a firearm. (Doc. 1, p. 3). No charges were filed and that case was immediately closed. (Doc. 10, p. 2). He was also arrested in February 2019 related to possession of a firearm, but no criminal charges were filed and he was released. *Id.* ICE began deportation proceedings following the September 2019 arrest.

Galan-Reyes has been denied bond by an Immigration Judge (IJ) several times (most recently on March 25, 2020), based on a finding that he is a danger to the community because of his arrests. (Doc. 1; Doc. 10, p. 2). He has appealed the denial to the Board of Immigration Appeals (BIA). (Doc. 1, p. 3; Doc. 10, pp. 3-4; Doc. 10-1, p. 4-6).[2] He has also applied for

---

[2] Respondents state that no appeal from Galan-Reyes has been received by the BIA, but Galan-Reyes maintains that it has been submitted and the docketing has likely been delayed by shutdowns related to the COVID-19 pandemic.

cancellation of removal.[3] The merits hearing on his application has been continued to June 10, 2020 due to the COVID-19 pandemic. (Doc. 1, p. 3; Doc. 10, p. 3). Given the current BIA backlog, Galan-Reyes could remain in detention for an additional eight months or more while awaiting a ruling. (Doc. 1, pp. 3-4; Doc. 1-6).

The Petition raises two claims: (1) Galan-Reyes' ongoing detention violates his Fifth Amendment right to due process because he has not been convicted of any offense which mandates deportation, he is not a danger to the community or a flight risk, and the conditions at Pulaski, which has multiple confirmed cases of COVID-19, place him at risk of serious illness or death; and (2) by keeping him in detention, ICE has acted arbitrarily and capriciously, in violation of the Administrative Procedures Act. (Doc. 1, p. 4; Doc. 4, Doc. 17). Respondents argue that this Court lacks jurisdiction to review the IJ's bond decision, that a habeas petition is not the proper vehicle to assert a claim based on conditions of confinement, that the conditions at Pulaski do not violate Galan-Reyes' rights, and that the review procedures under 8 U.S.C. § 1226(a) provide all the process he is due. (Doc. 10, pp. 8-18).

## Discussion

As an initial matter, based on their assertion that Galan-Reyes did not appeal the denial of bond to the BIA (which Galan-Reyes disputes), Respondents contend that he has failed to exhaust his administrative remedies. But exhaustion of administrative remedies after a denial of bond is not an absolute requirement; a constitutional challenge falls within the recognized exceptions to the general exhaustion rule. *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1016-17 (7th Cir. 2004) (noting the BIA has no jurisdiction to adjudicate constitutional issues); *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir 2002).

---

[3] Respondents state that Galan-Reyes has conceded the charge of removability. However, no final order of removal has been issued in his case. (Doc. 10, p. 3).

Galan-Reyes is in custody pursuant to 8 U.S.C. § 1226(a), under which "an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (Doc. 10, p. 2; Doc. 10-1, pp. 4-5); 8 U.S.C. § 1226(a) (emphasis added). While the removal decision is pending, the Attorney General may continue to detain the arrested alien or may release him or her on a minimum $1,500.00 bond or on conditional parole. 8 U.S.C. § 1226(a)(1) and (2). The decision to detain or release an individual pursuant to the statute is left to the discretion of the Attorney General. The statute further provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." 8 U.S.C. § 1226(e).

Respondents are correct that § 1226(e) prevents this Court from reviewing the IJ's discretionary decisions to deny bond. That said, Galan-Reyes does not seek such review; rather, he directly challenges Respondents' legal authority to continue his detention. The Supreme Court has left open courts' ability to consider individualized challenges to the constitutionality of immigration detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 851-52; *Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019) ("Our decision today on the meaning of that statutory provision [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it."); *Preiser v. Rodriguez*, 411 U.S. 475, 484, 500 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Vargas v. Beth*, 378 F. Supp. 3d 716, 722-23 (E.D. Wisc. 2019) (federal courts have jurisdiction over due process challenges to detention) (collecting cases). Additionally, courts have the inherent authority to grant bail to detainees in habeas proceedings. *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985).

It has long been established that detainees are entitled to procedural due process in relation to restraints on their liberty. *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at

690. At the same time, the government has a legitimate interest in protecting the community from any danger posed by a detainee and in ensuring his or her appearance at immigration proceedings. As such, when considering a habeas petition challenging detention, the Court must determine whether the particular detention at issue is reasonably related to one of these governmental interests – the government must justify continued civil confinement with "clear and convincing evidence" that the detainee is a flight risk or poses a danger to the community. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). *See also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Moreover, while the ordinarily "brief" detention associated with pending removal proceedings is constitutionally permissible (*See Demore*, 538 U.S. at 528-31, observing that detention under § 1226(c) lasts for less than 90 days "in the majority of cases"),[4] detention that becomes indefinite raises "serious constitutional concerns." *Zadvydas*, 533 U.S. at 682 (detention longer than 6 months during attempts to execute final order of removal was presumptively unreasonable). In assessing the constitutionality of continued immigration detention, courts consider a number of relevant factors, including: the length of detention to date; whether it exceeds the time the detainee was in prison for the crime that prompted removal proceedings; the likely duration of future detention; the conditions detention; whether civil detention is meaningfully different from punitive detention; whether delays in the removal proceedings were caused by the detainee or the government; and the likelihood that removal proceedings will be successful in light of any colorable defenses to removal. *See Vargas v. Beth*, 378 F. Supp. 3d 716, 727 (E.D. Wisc. 2019); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858 (D. Minn. 2019).

Here, the government has failed to present clear and convincing evidence that Galan Reyes

---

[4] Section 1226(c) mandates detention pending removal proceedings for certain "criminal aliens" as defined therein, and authorizes release only in narrow circumstances. By contrast, detention under § 1226(a) is discretionary, not mandatory.

poses a danger to the public if he is released. Neither of his 2019 arrests resulted in any criminal charges against him, much less a conviction. Respondents' assertion that he poses a danger to the community is based solely on police reports. Those reports reflect that in both instances, Galan-Reyes was in the company of another person who possessed a firearm, and in one case, was at a location where shots were fired. (Doc. 10, p. 11). Galan-Reyes denies having any knowledge that his companions had a weapon (Transcript, Doc. 21, pp. 9-11), and he was released both times after it was determined the gun did not belong to him. His sole criminal conviction was for a misdemeanor and resulted in a 64-day jail sentence.

Further, Respondents do not argue that Galan-Reyes is a flight risk or present any evidence to that effect. (Doc. 10, pp. 11, 19). He has significant family ties and a home to return to while his case is pending. He also has an interest in pursuing legal permission to stay in this country with his family. These factors indicate that he is unlikely to flee if released.

Galan-Reyes' future detention will likely be equal to or exceed the time he has already spent in ICE custody. His merits hearing has already been postponed to June 10, 2020. Further delays are likely given the current backlog of pending immigration cases due to the COVID-19 pandemic. Those delays are not attributable to Galan-Reyes and the continuances he sought earlier in the process were related to his efforts to obtain legal counsel and to appeal the adverse bond ruling. (Doc. 1, pp. 3-4, Doc. 10, pp. 16-17). He appears to have a colorable claim for cancellation of removal and/or for extension of his DACA status.

With respect to the conditions of Galan-Reyes' confinement, the serious threat of infection associated with the COVID-19 global pandemic and the particular challenges it presents in detention centers and similar environments are well known at this point:

> COVID-19 is a type of highly contagious novel coronavirus that is thought to be "spreading easily and sustainably in the community." Experts believe that it can

6

> live on some surfaces for up to 72 hours after contact with an infected person. A simple sneeze or brush of the face without washing your hands is now known to easily spread the virus, which generally causes fever, cough, and shortness of breath…In some cases, COVID-19 can cause serious, potentially permanent, damage to lung tissue, and can require extensive use of a ventilator. The virus can also place greater strain on the heart muscle and can cause damage to the immune system and kidneys.
>
> There is currently no vaccine for COVID-19, nor are there known, clinically-tested therapeutic treatments. As a result, public health officials have touted the importance of maintaining physical separation of at least six feet between individuals, now commonly known as "social distancing." Experts have also emphasized that proper hand hygiene with soap and water is vital to stop the spread. Beyond these measures, health professionals can do little to combat this highly infectious disease.
>
> Various public health officials have warned that the nature of ICE detention facilities makes them uniquely vulnerable to the rapid spread of highly contagious diseases like COVID-19. COVID-19 is transmitted primarily through "close contact via respiratory droplets produced when an infected person coughs or sneezes." Immigration detention facilities are particularly at risk for such close contact because they are considered "congregate settings, or places where people live or sleep in close proximity." Such conditions provide "ideal incubation conditions" for COVID-19. (Citations omitted)

*Thakker v. Doll*, 2020 WL 1671536, at *2-4 (M.D. Penn. March 31, 2020).

And, despite the best efforts of Respondent Acuff and Pulaski staff, COVID-19 infections persist at the facility. (Doc. 19). According to Acuff's Supplemental Declaration, as of May 9, 2020, 15 Pulaski staff members have tested positive for COVID-19 (14 of whom have been cleared by the Illinois Department of Public Health (IDPH) to return to work) and 17 detainees have tested positive (10 of those have recovered per IDPH and have been returned to general population). (Doc. 19-1, p. 5).[5]

Under the circumstances, Galan-Reyes' detention at Pulaski – where he shares dormitory-style living quarters with up to 50 other detainees – which obviously places him at risk for

---

[5] As of April 17, 2020, 6 staff members and 6 detainees had active COVID-19 infections (*See*, *Garcia Diaz v. Acuff*, Case No. 20-cv-352-SMY, Doc. 12).

contracting this serious and potentially deadly illness, is tantamount to punishment. *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473 (2015) (a detainee who has not been convicted of a crime may not be held under conditions that amount to punishment); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

For the foregoing reasons, in the absence of clear and convincing evidence that his release would endanger the public or that he is a flight risk, coupled with the known risks associated with the presence of COVID-19 at Pulaski, this Court concludes that Galan-Reyes' continued indefinite detention violates his Fifth Amendment right to due process. The government's interests in continuing his detention must therefore yield to his liberty and safety interests.[6]

**Disposition**

**IT IS HEREBY ORDERED** that the Petition for writ of habeas corpus is **GRANTED**.

Respondents are **ORDERED to IMMEDIATELY RELEASE** Omar Galan-Reyes, pursuant to the following conditions:

1. Petitioner will reside at a certain residence, will provide his address and telephone contact information to Respondents, and will quarantine there for at least the first 14 days of his release;

2. If Department of Homeland Security (DHS) determines that Petitioner is an appropriate candidate for Alternatives to Detention (ATD), then Petitioner will comply with DHS instructions as to any ATD conditions;

3. Petitioner will comply with national, state, and local guidance regarding staying at home, sheltering in place, and social distancing and shall be placed on home detention;

4. The Court's order for release from detention shall be revoked should Petitioner fail to comply with this order of release;

5. This Order does not prevent Respondents from taking Petitioner back into custody should Petitioner commit any crimes that render him a threat to public safety or

---

[6] In light of the Court's conclusion on Petitioner's due process claim, it is not necessary to address his Administrative Procedures Act claim.

    otherwise violate the terms of release;

6. Petitioner will be transported from Pulaski County Detention Center to his home by identified third persons;

7. Petitioner will not violate any federal, state, or local laws; and

8. At the discretion of DHS and/or ICE, to enforce the above restrictions, Petitioner's whereabouts will be monitored by telephonic and/or electronic and/or GPS monitoring and/or location verification system and/or an automated identification system.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  May 14, 2020**

    *s/ Staci M. Yandle*
    **STACI M. YANDLE**
    **United States District Judge**